IKUTA, Circuit Judge,
concurring in part.
I concur in sections one and three of the majority opinion and its holding, but write separately to express my disagreement with section two.
Section 230(f)(3) defines “information content provider” as “any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service.” 47 U.S.C. § 230(f)(3). Although “[sjection 230 does not preclude joint liability for the joint development of content,” the present case does not require us to determine what types of conduct would make a website operator a joint information content provider. Blumenthal v. Drudge, 992 F.Supp. 44, 50 (D.D.C.1998) (holding that AOL was immune from suit under the CDA, despite contracting with, and promoting the activities, of, a gossip columnist and rumor monger, in the absence of evidence that AOL “had some role in writing or editing the material” in the gossip column). Therefore, there is no need for the majority’s discussion of this issue. Indeed, the majority agrees that its tentative considerations in section two regarding “the outer limits of Carafano’s protection of websites” represents a task that we “need not undertake ... today.” In light of this acknowledgment, the majority’s thoughts are unnecessary and not intended to bind future courts.
Moreover, I disagree with the direction the majority is heading in section two when it explores, a possible interpretation of “information content provider.” We have previously rejected expansive interpretations of this phrase and have explicitly held that a website operator does not become an information content provider by soliciting a particular type of information or by selecting, editing, or republishing such information.
For example, in Carafano v. Metrosplash.com, Inc., we rejected a district *934 court’s determination that Matchmaker’s role in soliciting specific information made it an information content provider and not entitled to CDA immunity under section 230(c). 339 F.3d 1119, 1124 (9th Cir.2003) aff'g on other grounds 207 F.Supp.2d 1055 (C.D.Cal.2002). The district court noted that Matchmaker had solicited responses to a questionnaire with “sexually charged” multiple-choice questions and answers such as “Finally, why did you call? ... Scouting out for swinging couples ... Looking for a one-night stand.” 207 F.Supp.2d at 1060, 1066. The district court reasoned that by providing such a tailored questionnaire, “Matchmaker contribute[d] to the content of the profiles” and thus was partly responsible “for the creation or development of information contained in the profiles.” Id. at 1067 (internal quotation marks omitted). We disagreed, indicating that a website operator is not an “information content provider” unless it provides the “essential published content.” 339 F.3d at 1124. We stated:
Under § 230(c), therefore, so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific editing or selection process. The fact that some of the content was formulated in response to Matchmaker’s questionnaire does not alter this conclusion. Doubtless, the questionnaire facilitated the expression of information by individual users. However, the selection of the content was left exclusively to the user.

Id.

We have also rejected the position that a website operator becomes an “information content provider” if it intentionally selects, edits, and publishes defamatory information. In Batzel v. Smith, we upheld the immunity of a website operator dedicated to “museum security and stolen art,” who had received an allegedly defamatory email on this topic, and subsequently edited and republished it on the website. 333 F.3d 1018, 1021 (9th Cir.2003). We disagreed with the analysis of the dissent in that case, which would have held that the website operator was an information content provider because
[a] person’s decision to select particular information for distribution on the Internet changes that information in a subtle but important way: it adds the person’s imprimatur to it.... Information that bears such an implicit endorsement is no longer merely the “information provided by” the original sender. 47 U.S.C. § 230(c)(1). It is information transformed. It is information bolstered, strengthened to do more harm if it is wrongful. A defendant who has actively selected libelous information for distribution thus should not be entitled to CDA immunity for disseminating “information provided by another.”
Id. at 1038-39 (Gould, J., concurring in part and dissenting in part).
Avoiding this broad interpretation of “information content provider,” we held that immunity from “ ‘publisher’ liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message.” Id. at 1031. We noted that “[ojther courts have agreed that the exercise of a publisher’s traditional editorial functions — such as deciding whether to publish, withdraw, postpone or alter content do not transform an individual into a content provider within the meaning of § 230.” Id. at 1031 n. 18 (internal quotation marks omitted); see also Barrett v. Rosenthal, 40 Cal.4th 33, 51 Cal.Rptr.3d 55, 146 P.3d 510, 528 (2006) (relying on Batzel in reaching its conclusion that “[a] *935 user who actively selects and posts material based on its content fits well within the traditional role of ‘publisher’ ” and that “Congress has exempted that role from liability”). Although not expressly addressed by our case law, a “publisher’s traditional editorial functions” also include seeking out and specializing in a specific type of publication, just as in Batzel, where the website operator operated a website dedicated to a specific topic (museum security and stolen art). Batzel did not suggest that this fact made the operator an information content provider.
In sum, our binding precedent has already addressed the question when a website operator has jointly created and developed content so as to become an “information content provider.” Unless a website operator directly provides “the essential published content,” Carafano, 339 F.3d at 1124, it is not an “information content provider.” The result is robust immunity under section 230(c).